UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREGORY GEORGE** | **CIVIL ACTION** |
| **VERSUS** | **NO:     05-0384** |
| **JOANNE B. BARNHART,**<br>**COMMISSIONER OF SOCIAL SECURITY** | **SECTION: "N" (4)** |

**REPORT AND RECOMMENDATION**

**I.     Introduction**

This action, filed pursuant to Title 42 U.S.C. § 405(g), seeks judicial review of a final decision of the Commissioner of Social Security.  The Commissioner denied Gregory George's claim for Supplemental Security Income Benefits under Title XVI of the Social Security Act, Title 42 U.S.C. § 1382c.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

**II.     Factual Summary**

On  May 27, 2003, the United States District Judge remanded the subject matter for additional administrative review . In remanding, the Court concluded that the Administrative Law Judge ("ALJ") failed to properly consider George's functional limitations, or deficiencies of concentration, persistence, or pace in ability to complete tasks.  The Court further remanded the

matter to allow the ALJ to determine whether George received treatment for his mental impairment of major depression.

A new hearing was held on May 10, 2004 before ALJ S.N. Willet. At the time of the hearing George, a high school graduate, was 49 years old. (Tr. 15). His only work experience consisted of working as a telephone solicitor sometime in the late 1980's and as a census enumerator. (Tr. 86).

George was sent to a consulting psychologist, Dr. Scuddy Fontenelle, Ph.D., where he related that he suffered from depression and medical problems. (Tr. 504-509). At the consultation, George admitted earlier problems with alcohol and the use of pills and marijuana. (Tr. 505). Dr. Fontenelle noted that George's grooming was sub-optimal, he sat slouched in his chair during the interview and his speech was slurred. (Tr. 506). He also noted that George was able to perform simple arithmetic but not multiplication or division. (Tr. 507). Dr. Fontenelle diagnosed George with Alcohol Abuse, Depression Disorder, Mild Mental Handicap, and Mild Deficit Social Adaptive Skills. (Tr. 509).

No treatment records pertaining to George's mental treatment were submitted in connection with the recent hearing which the ALJ regarded as "speakin[ing] volumes concerning the bona fides of claimant's contentions about having a depressive disorder." (Tr. 380). Further, George testified during the recent hearing that he had no mental health treatment. *Id.*

On rehearing, the ALJ found that the evidence did not establish the existence of a mental impairment meeting or exceeding the listing found at 20 C.F.R. Pt. 404 Subpt. P. § 12.05(C) or § 12.04 because George only had subjective complaints of depression.[1] The ALJ further found that

---

[1]The ALJ suggests that the absence of an analysis on the subject of George's mental impairment in his previous opinion should have been an indication that he did not think that the condition was significant. However, the prevailing case law requires the ALJ to set forth the reasons for his opinion which support the conclusion which would then allow the court the opportunity to determine if the conclusion was based on substantial evidence.

George's disability ceased on January 1, 1997.

Now George challenges the ALJ's finding on two grounds: (1) the ALJ erred when he concluded that George did not meet listing level 12.05(C) because he had an IQ score of 66 and an additional impairment of paralysis of the arm[2] and, (2) the ALJ erred because he failed to evaluate whether George could obtain and maintain employment as required by *Watson v. Barnhart*, 288 F.2d 212 (5th Cir. 2002).

### III. Standard of Review

The role of the Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary. *See id*. If supported by substantial evidence, then the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "It is more than a mere scintilla and less than a preponderance." *Id.* It must do more than create a suspicion of the existence of the fact to be established, and no "substantial evidence" will be found only when there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Payne v.*

---

[2] Dr. Djuric diagnosed George with a motor neuron injury of the left arm, consistent with a brachial plexus injury. This resulted in left arm paralysis with no active movement or sensation present. (Tr. 320) Dr. Djuric found that any activities requiring use of both arms or heavy lifting was compromised. He further opined that George should not be in a dangerous environment with heavy machinery or heat as his left arm position sense was absent, as were other types of sensation. *Id.*

*Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A). Section 423(d)(3) of the Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five. *See Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

For mental impairments, an additional regulatory process supplements the five-step process detailed above. *Plummer v. Apfel*, 186 F.3d 422, 428 ( 3d Cir. 1999). It requires the hearing officer to record the pertinent signs, symptoms, findings, functional limitations and effects of treatment contained in the case record in order to determine if a mental impairment exists. *Id.* If an impairment is found, then the examiner must analyze whether certain medical findings relevant to a claimants ability to work .[3] *Id.*

## IV.   Analysis

### A.   Listing level 12.05(C)

George contends that the ALJ erred by concluding that he did not meet the listing level requirement of 12.05(C) because of the lack of evidence that his mental retarding began before the age of 22. George contends that because a psychologist testified that he believed the I.Q. scores were valid, that the ALJ should have concluded that George met the listing level requirements.

The Commissioner contends that the evidence establishes that George did not meet the requisite adaptive functioning limitations before reaching age 22 . Therefore even if the results of George's I.Q. score are valid, he failed to meet the listing level requirement of 12.05(C) because his diminished I.Q. occurred after age 22.

Listing 12.05 provides, in pertinent part, that mental retardation refers to "significantly sub-average general intellectual functioning with deficits in adaptive functioning  initially manifested during the developmental period. . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05. Under the

---

[3] 20 C.F.R. § 404.1520a(c)(3) provides for the examination of the degree of functional loss in four areas of function considered essential to work. These areas of activities are; daily living; social functioning, concentration, persistence pace; and deterioration, or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3). The degree of functional loss is rated on a scale that ranges from no limitation to severe the claimant cannot perform these work related functions. 20 C.F.R § 404.1520a(c)(4). This information  is detailed in the Psychiatric Review Treatment Form.

regulations, "the evidence [must] demonstrate[] or support[] onset of the impairment before age 22. *Id.* 12.05 provides that the"the required level of severity for this disorder is met when the requirements in A,B,C, or D is satisfied. Here, George contends he met the requirements of C.

12.05(C) requires "a valid verbal, performance or full scale IQ of 60 through 70 and a physical other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05(C). Thus, according to the regulations, I.Q. tests are a part of the cognitive assessment.

The ALJ found that, according to the record, George failed to establish that his intellectual limitations existed before the age of 22. In support of his conclusion the ALJ pointed to an earlier I.Q. test which indicates that at the time George had a full scale I.Q. of 85. [4] He also pointed to the opinion of Dr. Kronberger that given George's work history, previous test scores, education, and that he attended college for a semester, that he was not mentally deficient. (Tr. 381).

The Court concludes that while George's current I.Q. is in the range prescribed by 12.05(C), the record evidence suggests that the decline in his I.Q. did not occur before he reached the age of 22. Therefore, the ALJ's opinion is based upon substantial evidence.

### B. Evaluation of whether could obtain and maintain employment

George next complains that the ALJ failed to make a determination of whether he could obtain and maintain employment as required by *Watson v. Barnhart,* 288 F.2d 212( 5th Cir. 2002). George contends that where there is an allegation that the claimant can only work in "short spurts", the ALJ should make a determination as to whether the claimant can obtain and maintain employment.

---

[4]At the time of the 1991 I.Q. test, George was 36 years old.

The Commisioner contends however that the Fifth Circuit's ruling in *Watson* does not warrant a remand in this case because the ALJ was not required to make a separate and formalistic finding that George could not maintain employment.

The record shows that George's complaint is that he has not worked since 1988, not that he obtained jobs since that time and had difficulty maintaining those jobs because of his disability. Therefore the Court is of the opinion that *Watson* is not applicable to the subject case. There is no contention he sought work, obtained work, but could not maintain the position because of a mental or physical condition. Therefore the Court finds that ALJ properly did not consider the *Watson* factors as there was no evidence of record to support the additional consideration of whether George could obtain and maintain work.

**V.     Recommendation**

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Gregory George's Supplemental Security Income Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __27th__ day of March 2006

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**